**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **Ernest Darko,** | |
| **Plaintiff,** | **Case No. 21-cv-6467** |
| **v.** | **Judge Jorge L. Alonso** |
| **City of Chicago, Illinois, Anfernee Ixcot (Star No. 19930), Jose Roman (Star No. 19361), Anthony Sorrentino (Star No. 8945), Sean Gleason (Star No. 10251), Brendan Cimaglia (Star No. 14997), Justin Englert (Star No. 4969), Brian Warchol (Star No. 1737), Rogelio Salas (Star No. 6130), Edgar Rojas (Star No. 5152), Samuel Hudacek (Star No. 19289), Carl Crocker, Jr. (Star No. 19234), Antonio Ramirez (Star No. 19116), Erik Moreno (Star No. 11320), Ryan Brown (Star No. 1836), and Willingham L. Russell (Star No. 511),** | |
| **Defendants.** | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ernest K. Darko ("Plaintiff") brings this action against the City of Chicago (the "City") and certain named police officers employed by the City (the "Defendant Officer(s)" and together with the City, "Defendants") following his arrest, asserting claims for alleged constitutional violations and infliction of personal injury. The City has moved to dismiss under Federal Rules of Procedure 12(b)(5) and 12(b)(6) for insufficient service of process and failure to state a claim. For the following reasons, the City's motion to dismiss is granted.

### I.    BACKGROUND

On December 15, 2019, Plaintiff was driving his vehicle westbound on 69th Street with Dorina Poole as a passenger. (First Am. Compl. ¶ 19, ECF No. 9.) Two police officers,

Defendant Officers Roman and Ixcot, driving eastbound made a U-turn in order to pull Plaintiff over. (*Id.* ¶¶ 19-21.) Plaintiff instructed Poole to record a video with her cell phone of the interaction between Plaintiff and the police officers. (*Id.* ¶ 24.) Defendant Officer Ixcot approached Poole's side of the vehicle, while Defendant Officer Roman approached Plaintiff's window and said he pulled Plaintiff over because of a burnt-out license plate bulb. (*Id.* ¶¶ 25-26.) Plaintiff responded that that was not a valid reason to pull him over since it was still light outside. (*Id.* ¶ 27.) He then refused to provide license and insurance when asked to do so by the officers, stating he had committed no crime and citing his constitutional rights. (*Id.* ¶¶ 28-29.)

Plaintiff asked whether he had committed any crime and was told that he had not. (*Id.* ¶ 30.) Plaintiff requested to speak to a sergeant and began to explain to Defendant Officer Ixcot that he had been "illegally" pulled over earlier that year and "got the illegal arrest dismissed by the judge." (*Id.* ¶¶ 31-32.) The sergeant, Defendant Sergeant Brown, arrived and informed Plaintiff that if he did not provide identification, Plaintiff would be placed under arrest for resisting arrest and obstruction of justice. (*Id.* ¶¶ 34-35.) Plaintiff responded that he would sue the officers for violation of his human rights and constitutional rights if they "put their hands" on him and Poole. (*Id.* ¶ 36.)

Defendant Sergeant Brown then instructed the other Defendant Officers present to remove Plaintiff from his car. (*Id.* ¶ 37.) Defendant Officers Roman and Ixcot placed their hands inside the vehicle to unlock the doors and remove Plaintiff. (*Id.* ¶¶ 37-38.) Plaintiff told them to remove their hands and rolled up the window. (*Id.* ¶ 38.)

Defendant Officers Gleason and Cimaglia then arrived at the scene in plain clothes. (*Id.* ¶ 39.) Defendant Sergeant Brown ordered "his subordinates" to break the window and charge Plaintiff with resisting arrest. (*Id.* ¶ 40.) Defendant Officer Cimaglia broke the vehicle window

with a "metal object" causing glass to shatter onto Plaintiff's face and body. (*Id*. ¶ 41.) One of the plain-clothes Defendant Officers then unlocked all of the doors, and one of the uniformed Defendant Officers pulled Poole, who was emotional and crying, out of the car. (*Id*. ¶¶ 42-43.) Defendant Sergeant Brown ordered "his subordinates" to put Poole in the back of the police squad car, to which Poole replied that she did nothing wrong, so there was no reason for her to get inside the police car. (*Id*. ¶ 49.)

At that point, multiple things happened at once. Defendant Officer Cimaglia got into the passenger side of the vehicle and threatened to tase Plaintiff while pointing the taser at him. (*Id*. ¶ 44.) Defendant Officer Gleason simultaneously opened the back door of the vehicle and began choking Plaintiff with the sweatshirt that Plaintiff was wearing, ripping it down the middle and "cutting off" Plaintiff's windpipe. (*Id*. ¶ 46.) Defendant Officers Roman and Ixcot were, at the same time, hand cuffing Plaintiff and using the handcuffs to pull Plaintiff out of his seat. (*Id*. ¶ 47.)

Defendant Officer Cimaglia then "rush[ed] over" to Poole, told her "no more playing nice," and handcuffed her hands behind her back. (*Id*. ¶ 51.) Poole continued to protest that she did nothing wrong to be placed in handcuffs and in a police car. (*Id*. ¶ 52.) Defendant Sergeant Brown ordered "his subordinates" to tase Plaintiff, and Defendant Officer Roman did so. (*Id*. ¶¶ 53-54.) Defendant Officer Ixcot and other Defendant Officers "ripped" Plaintiff out of the vehicle and dragged him along the ground to the back of the vehicle. (*Id*. ¶¶ 55-56.) While Plaintiff was on the ground, Defendant Officer Cimaglia "violently thrust[] his knee" into the middle of Plaintiff's back while handcuffing Plaintiff behind his back, thereby "inflicting more bodily harm" to Plaintiff. (*Id*. ¶ 57.) Multiple of the Defendant Officers held Plaintiff down with "multiple knees in [his] back" while Defendant Sergeant Warchol came over and put shackles on

Plaintiff's legs. (*Id*. ¶ 58.) Meanwhile, a "group of police officers" were searching Plaintiff's vehicle. (*Id*. ¶ 59.)

Plaintiff was immediately thereafter taken to St. Bernard Hospital by ambulance where he waited in the emergency room for several hours before being treated for the discharge of the taser, back pain and pain in his throat as a result of being choked. (*Id*. ¶¶ 60, 63.) The Defendant Officers "abandoned" Poole "on [the] 700 West block of 69th St.," at night and alone. (*Id*. ¶ 61.) Plaintiff's family sent an attorney to the hospital "to check on [Plaintiff's] well being," but the "sergeant" ordered "his subordinates" to not let the attorney in to see Plaintiff. (*Id*. ¶ 62.) Upon his discharge from St. Bernard Hospital, Plaintiff was arrested. (*Id*. ¶ 64.)

Plaintiff alleges that it is the City's "custom and practice" to "fail[] to adequately train and supervise its police officers" to "mitigate use of force in low level non[-]violen[t] [traffic] stop[s]" where there was no violent crime involved (*id*. ¶ 67), and "in the appropriate circumstances under which they are authorized and allowed to discharge their Taser Guns into detainees or people of the community." (*Id*. ¶ 68.) Plaintiff further alleges that it is the City's "custom and practice" to "fail[] to discipline its officers . . . in any way for the use of excessive force on people of the community and in particular, the inappropriate use of the Taser Gun against Plaintiff." (*Id*. ¶ 69.) Plaintiff alleges that both Defendant Sergeant Brown and Defendant Watch Commander Russell, "commensurate with [their] training . . . and in accordance with the customs and practices" of the City, "took no action to intervene and stop the excessive force against Plaintiff." (*Id*. ¶¶ 65-66.)

Plaintiff further alleges that it is the City's "custom and practice" to allow its police department's "broken disciplinary [and] supervisory systems to flourish by enabling its police officers to abuse vulnerable . . . people with impunity." (*Id*. ¶ 70.) Finally, Plaintiff alleges that

there is a "code of silence" that exists within the Chicago police department "whereby officers conceal each other's misconduct in the contravention of their sworn duties." (*Id.* ¶ 72.) Plaintiff alleges that the code of silence and interferences with investigation into police officer misconduct "are evidenced and caused by" the police department's "failure to: (a) sufficiently investigate allegations of police misconduct; (b) promptly interview suspected officers or take witness statements and preserve evidence; (c) properly and sufficiently discipline officers; and (d) maintain accurate and complete records of complaints and investigations of misconduct." (*Id.* ¶ 73.) Plaintiff alleges that these interferences with investigation into police misconduct and code of silence "encourage Chicago police officers to engage in misconduct with impunity and without the fear of official consequences." (*Id.* ¶ 74.)

Plaintiff filed this suit on December 3, 2021. The operative complaint asserts the following four counts against the named police officers, sergeant, and the City: (I) "false seizure" under the Fourth Amendment and 42 U.S.C. § 1983; (II) excessive force under the Fourth Amendment and 42 U.S.C. § 1983; (III) assault and battery; and (IV) intentional infliction of emotional distress ("IIED"). The City has moved to dismiss under Rule 12(b)(5) and 12(b)(6) for insufficient service of process and failure to state a claim.

This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 because Plaintiff's complaint alleges actions arising under the Fourth Amendment of the United States Constitution. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 n.6 (1987) ("Federal district courts have original jurisdiction over 'all civil actions arising under the Constitution . . . of the United States.'" (quoting 28 U.S.C. 1983)); *Piscopo v. State Farm Ins.*, 527 Fed. Appx. 552, 553 (7th Cir. 2015). This Court has supplemental jurisdiction over the assault and battery and IIED claims under 28 U.S.C. § 1367. *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015)

("[28 U.S.C. § 1367] lays out a framework by which courts may exercise supplemental jurisdiction over state law claims that share 'a common nucleus of operative facts' with a federal claim properly brought before the court." (quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999))).

## II.  LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6), a claimant must plead facts that are sufficient to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim requires factual allegations sufficient to support a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must acknowledge all facts provided by the claimant as true, however, any "legal conclusions" should not be accepted as true. *Id.* Pleadings "filed *pro se* [are] to be liberally construed, . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Beal v. Beller*, 847 F.3d 897, 902 (7th Cir. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Under Rule 12(b)(5), a defendant can file a pretrial motion to dismiss for insufficient service of process. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). If the Court finds that the plaintiff has not demonstrated effective service on each defendant, "the [Court] must either dismiss the suit or specify a time within which the plaintiff must serve the defendant." *Id.* (citing Fed. R. Civ. P. 4(m)).

## III.  DISCUSSION

### A. Service of Process on Individual Defendant Officers

The City first argues that Plaintiff has failed to serve the individual Defendant Officers in compliance with Federal Rule of Civil Procedure 4. Plaintiff argues in response that by serving

the individual Defendant Officers at their place of employment "with a copy of the summons and complaint by means of a process server," he was acting "in good faith" and showing "reasonable diligence" in effecting service of process on the Defendant Officers. (Pl.'s Resp. to Def.'s Mot. to Dismiss 3.) Although the City is purporting to file a motion on behalf of parties that it does not represent, that procedural irregularity need not detain the Court because the Court may address sufficiency of service *sua sponte*. Fed. R. Civ. P. Rule 4(m); *Cardenas*, 646 F.3d at 1005.

Under Federal Rule of Civil Procedure Rule 4(m), "if a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). "These service requirements provide notice to parties, . . . encourage parties and their counsel to diligently pursue their cases, . . . and trigger a district court's ability to exercise jurisdiction over a defendant[.]" *Cardenas*, 646 F.3d at 1005 (citations omitted); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." (citation omitted) (internal punctuation omitted)).

Two methods by which an individual defendant can be served are, "(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of

suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e).

Plaintiff did not serve the individual Defendant Officers using any of the three methods listed under subsection (2), therefore the Court should look to Illinois law, where the Court is located, for guidance on sufficient service of process. Under Illinois statute, a defendant must be served by either "leaving a copy of the summons with the defendant personally . . . [or] by leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there . . . ." 735 ILCS 5/2-203. Under Illinois law, serving an individual's employer is not sufficient for service on the individual. *Cardenas*, 646 F.3d at 1005 (citing 735 ILCS 5/2-203).

There is no indication that Plaintiff has complied with either Federal Rule of Civil Procedure 4(e) or 4(m) and so service upon the individual Defendant Officers is legally insufficient. The Court will nonetheless consider whether Plaintiff has shown good cause for insufficient service of process and if so, the Court "*must* extend the time for service, while if good cause is not shown, the court has a choice between dismissing the suit and giving the plaintiff more time." *United States v. McLaughlin*, 470 F.3d 698, 700 (7th Cir. 2006) (emphasis original).

While there is no bright-line test, Plaintiff bears the burden of demonstrating good cause, which must be supported by a showing of "reasonable diligence." *Bachenski v Malnati*, 11 F.3d 1371, 1376-77 (7th Cir. 1993). Good cause typically "means a valid reason for delay, such as the defendant's evading service." *Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 934 (7th Cir. 2002). This suit was initially filed against the individual Defendant Officers on December 3, 2021. (ECF No. 1.) Plaintiff made no effort to serve any of the Defendants until the Court, of its

own accord, scheduled a status hearing for August 4, 2022. (Status Hr'g Tr. 2:16-3:4, ECF No. 17.) The Court at that time found "good cause" to grant an extension "based in part on the fact that [Plaintiff] is pro se." (Status Hr'g Tr. 4:4-7, ECF No. 17.) The Court granted a "final extension" to September 19, 2022, to properly serve the parties, with which Plaintiff failed to comply. (Status Hr'g Tr. 4:5, ECF No. 17; Minute Entry dated Aug. 4, 2022, ECF No. 12.) The Court warned Plaintiff that if service was not perfected by that time, the case could be dismissed. (Status Hr'g Tr. 4:6-7, ECF No. 17.)

Plaintiff argues that he has "actually complied, in good faith, to serve each of the defendants in this case" by having a process server leave a copy of the summons and complaint with "their employer City of Chicago office located at 30 N. LaSalle St. #107 Chicago, IL 60602." (Pl.'s Resp. to Def.'s Mot. to Dismiss 3.) Plaintiff attaches to his response brief copies of the service of process returned by the process server, which are dated from August 2022—prior to the expiration of the Court's "final extension." (*Id*. Ex. A.) The returns do not check any box that would identify which method of service was used. (*Id*.) Each return states the address "30 N. LaSalle, Room 107, Chicago, IL, 60602" and is stamped as "RECEIVED" by the "OFFICE OF THE CITY CLERK." (*Id*.) Plaintiff, however, has not shown that the City Clerk of Chicago, or the City Hall Office, was an authorized agent under Rule 4(e). *See Cardenas*, 646 F.3d at 1005-06 (affirming dismissal for lack of service where the plaintiff had made this very error); *see also Cardenas v. City of Chicago*, No. 08 C 3174, 2010 WL 610621, at *1-2 (N.D. Ill. Feb. 15, 2010). Accordingly, Plaintiff has not shown good cause for failing to sufficiently serve process on the individual Defendant Officers for over two and a half years.

The Court can still use its discretion in deciding whether to allow Plaintiff more time or to dismiss the action without prejudice. Courts "should consider the relative hardships of the

parties in arriving at its discretionary choice between dismissal and extension of time."
*Cardenas*, 646 F.3d at 1006. In balancing the hardships, courts "may" consider "(1) whether the
expiration of a statute of limitations during the pending action would prevent refiling, (2)
whether the defendant evaded service, (3) whether the defendant's ability to defend would be
prejudiced by an extension, (4) whether the defendant had actual notice of the lawsuit, (5)
whether the defendant was eventually served[,]" (6) whether the plaintiff "requested an extension
from the court due to difficulties perfecting services[,]" and (7) "whether [the plaintiff] diligently
pursued service during the allotted period[.]" *Id*. at 1006-07; *Chi. Heights Check Cashers, Inc. v.*
*U.S. Postal Serv.*, No. 18 C 990, 2018 WL 2450474 at *3 (N.D. Ill. May 31, 2018). However,
"even if the balance of hardships appears to favor an extension, the district court retain[s] its
discretion to hold the Plaintiffs accountable for their actions—or, more accurately, inaction—by
dismissing the case." *Cardenas*, 646 F.3d at 1007.

Here, the balance of the hardships does not favor an extension. On the one hand, the two-
year statute of limitations on Plaintiff's constitutional claims expired on December 15, 2021,
which would prevent refiling. *See Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998)
("In order to determine the proper statute of limitations for § 1983 actions, a federal court must
adopt the forum state's statute of limitations for personal injury claims." (citing *Wilson v. Garcia*,
471 U.S. 261, 276 (1985))); *see also Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) ("A
two-year statute of limitations generally applies to personal injury actions in Illinois . . . thus,
§ 1983 claims in Illinois are also governed by a two-year limitations period." (citing *Hileman v*
*Maze*, 367 F.3d 694, 696 (7th Cir. 2004))). But for the reasons explained below, Plaintiff's state
law claims were time-barred before he even filed this suit.

On the other hand, Plaintiff made only one (ineffectual) attempt at service over eight months after the filing of this suit, albeit before the expiration of the Court's "final extension." There is nothing to suggest that the Defendant Officers evaded service. And there is also no indication that in the two and a half years since this suit was filed, the Defendant Officers ever actually received notice of this lawsuit or were eventually served. Plaintiff made no request from the Court for an extension due to any difficulty in perfecting service. Upon consideration of the circumstances, the Court in its discretion declines to grant any further extension to Plaintiff for perfecting service.

Because Plaintiff has failed to properly serve the individual Defendant Officers or show good cause for an extension, this action is dismissed with prejudice as against those defendants. *See Cardenas*, 646 F.3d at 1008 (dismissal with prejudice is "appropriate where the plaintiff did not meet Rule 4(m) and where the statute of limitations expired during the federal case").

## B. Statute of Limitations for Assault and Battery (Count III) and IIED (Count IV)

The City next argues that Counts III and IV of Plaintiff's complaint are untimely pled, as the statute of limitations elapsed prior to Plaintiff filing his complaint. The Court agrees.

Plaintiff's claims for assault and battery and IIED arise out of state law, therefore the Court must look to Illinois law to determine the statute of limitations for these claims. *Nesbitt v. City of Champaign*, No. 01-3173, 2002 WL 521932, at *1 (7th Cir., Apr. 4, 2002) (affirming dismissal of state law assault, battery, and wrongful arrest claims as barred by the statute of limitations set forth in 745 ILCS 10/8-101); *see also Williams*, 399 F.3d at 870 (employing 745 ILCS 10/8-101 in holding that plaintiff's state law tort claims were untimely).

In Illinois, general personal injury claims typically have a statute of limitations period of two years. *Kalimara v. Ill. Dep't of Corr.*, 879 F.2d 276, 277 (7th Cir. 1989). However, under

Illinois statute, "no civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a). The one-year statute of limitations applies to "state-law claims that are joined with a § 1983 claim" against an Illinois local government entity and its employees. *Williams*, 399 F.3d at 870. The City of Chicago and individual police officer defendants all fall within the meaning of a "local entity" and its "employees." *See Davenport v. Dovgin*, 545 F. Appx. 535, 538 (7th Cir. 2013) (one-year limitations period applied to IIED claim against "City of Chicago, its police department, and several city employees"). Further, under Illinois law, a municipality may be held liable for torts such as assault, battery, and IIED committed by police officers under a theory of *respondeat superior*. *See Hampton v. City of Chicago*, 484 F.2d 602, 610 (7th Cir. 1973). Accordingly, a one-year statute of limitations applies to Counts III and IV in this case. And "[a]lthough the statute of limitations is an affirmative defense, a court may dismiss a claim as time–barred if the complaint sets forth the necessary information to show that the statute of limitations has expired." *Davenport*, 545 F. Appx. at 538.

The injuries alleged in Plaintiff's assault and battery and IIED claims all occurred on December 15, 2019. Plaintiff filed this action on December 3, 2021—just under two years after the clock started ticking. The statute of limitations for these claims has consequently elapsed.

Plaintiff argues that this Court should consider the COVID-19 pandemic as a reason for failing to file the complaint within one year. Plaintiff essentially requests that the Court equitably toll the statute of limitations. "Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d

593, 595 (7th Cir. 2001). A plaintiff "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Socha v. Boughton*, 763 F.3d 674, 683 (7th Cir. 2014) (citation omitted). Equitable tolling is rarely granted. *Id*.

Plaintiff has not met the high standard for equitable tolling here. Within the Northern District of Illinois, there were no protocols in place for the COVID-19 pandemic that "shut down court operations or excused or prevented parties from making filings." *Flowers v. Stec*, No. 20-cv-06498, 2023 WL 15474, at *4 (N.D. Ill. Jan. 2, 2023); *see also McNett v. Jeffrey*, No. 20-cv-00426, 2021 WL 2554440, at *2 (S.D. Ill. June 22, 2021) ("It also does not appear that the State of Illinois amended its statute of limitations period to create an extension due to COVID-19."). Therefore, Plaintiff fails to show either that he diligently pursued his rights or that the COVID-19 pandemic is an extraordinary circumstance meriting an extension for court filings.

Accordingly, Plaintiff's claims against the City for assault and battery (Count III) and IIED (Count IV) are dismissed with prejudice as untimely. *See Pavlovsky v. Vannatta*, 431 F.3d 1063, 1064 (7th Cir. 2005) ("The dismissal of a suit as untimely is a dismissal on the merits, and so should ordinarily be made with prejudice, barring relitigation." (citations omitted)). The claims against the individual Officer Defendants are untimely for the same reasons, which, as the Court stated above, supports their dismissal with prejudice for lack of service.

### C. *Monell* Claims Against the City

The City argues that Plaintiff has not adequately pled *Monell* claims against it. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Pursuant to *Monell*, a "municipal entity can be liable under section 1983 for constitutional violations only if those violations were brought about by: (1) an express policy; (2) a widespread, though unwritten, custom or practice; or (3) a

13

decision by an agent with final policymaking authority." *Gonzalez v. McHenry Cty.*, 40 F.4th 824, 829 (7th Cir. 2022) (citation omitted) (footnote omitted). Plaintiff asserts constitutional violations by the City of Chicago—a municipal entity—pursuant to 42 U.S.C. § 1983, and so Count I ("False Seizure"/False Arrest) and Count II (Excessive Force) are controlled by the standard set forth in *Monell*.

To adequately plead a *Monell* claim, Plaintiff must allege: "(1) an action pursuant to a municipal policy [of one of the three varieties set forth above], (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation . . ." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020). The Court addresses each element below.

### i.     Municipal Policy and Causation

The Court considers the first and third elements together as the two go hand in hand; if Plaintiff fails to allege a municipal policy, that policy cannot be the cause of Plaintiff's alleged constitutional injury. *See Gonzalez*, 40 F.4th at 829 ("The critical question under *Monell* is whether a policy or custom of a municipal entity caused a constitutional deprivation.").

Plaintiff makes no allegation or argument of an express policy, or any specific decision by an agent, of the City of Chicago. The question is thus whether Plaintiff adequately alleges "a widespread, though unwritten, custom or practice." *Id*. A "widespread" policy requires more than a single instance of misconduct, such that it is not "a random event." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

Plaintiff alleges it is the City's and the Chicago police department's "custom and practices" to fail to train officers to mitigate the use of force in non-violent traffic stops and when it is appropriate to use taser guns, to fail to intervene in and discipline for the use of excessive

14

force and inappropriate use of taser guns, and to perpetuate a code of silence and practice of interfering with investigation into police misconduct that encourages officers to engage in misconduct with impunity. *Supra*. Although Plaintiff uses the words "custom and practice," at bottom he alleges only one incident that happened to him on December 15, 2019, which is typically insufficient to show a widespread policy. *See Hutton v. City of Chicago*, No. 20-cv-03991, 2021 WL 809731, at *3 (N.D. Ill. March 3, 2021) (stating that courts in this district typically dismiss *Monell* claims based solely on a plaintiff's specific incident); *see also Mui v. Dietz*, 559 F. Supp. 485, 488 (N.D. Ill. March 16, 1983) ("While it is not necessary to plead the specific details of the similar incidents of misconduct, such similar instances involving either the plaintiff or other similarly situated persons must be pled."). Plaintiff does allege that he previously had an unlawful arrest resulting from an unlawful traffic stop dismissed by a judge, but nothing suggests that that incident involved the use of excessive force or a taser gun.

While there is "no blanket rule that *Monell* plaintiffs must always allege multiple instances of unconstitutional conduct in order to show that a policy exists[,]" allegations of a "single instance of wrongdoing" must be made in a "context" that "support[s] an inference that a more *systemic* policy or custom exists." *Jackson v. Vill. of Justice*, No. 17-CV-07739, 2020 WL 1530734, at *3 (N.D. Ill. Mar. 31, 2020) (emphasis original). For example, a plaintiff's allegations that a "standard printed form that does not require factual support," coupled with the plaintiff's description of his individual experience, were enough to infer that the alleged standard form was used in all or many arrest-warrant applications and so sufficiently alleged a widespread policy. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016). A single incident of excessive force, however, stands on different footing, to the extent that no surrounding circumstances suggest that officers behaved the same way on other, similar occasions. *See Jackson*, 2020 WL

15

1530734, at *3-4. Here, as in *Jackson*, "the nature and specifics of the underlying constitutional claim demand that more than one instance *is* needed to make out a plausible inference for the existence of a widespread but unwritten policy or custom[,]" which Plaintiff fails to allege. *Id.* (emphasis original).

Further, here there are no factual allegations (as opposed to conclusory allegations) linking the alleged misconduct of the individual Defendant Officers in this case to any of the alleged policies or customs in the complaint. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (finding allegations that the City of Chicago "has an unwritten custom, practice and policy to afford lesser protection or not at all to victims of domestic violence" and "authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein," to be "legal conclusions or elements of the cause of action, which may be disregarded on a motion to dismiss"); *Mikolon v. City of Chicago*, No. 14-cv-1852, 2014 WL 7005257, at *4 (N.D. Ill. Dec. 11, 2014) (finding allegations of "a code of silence . . . willful, wanton, and deliberately indifferent failure to train, supervise, and discipline police officers . . . failure to adequately investigate and substantiate allegations . . . and . . . failure to adequately discipline police officers" were "boilerplate conclusions" that were "not enough to carry a *Monell* claim past the pleading stage").

In Plaintiff's response brief, he points to statistics that purportedly show that the City of Chicago stops more minority motorists than white motorists. (Pl.'s Resp. to Def.'s Mot. to Dismiss 4-5.) The City argues that this Court should not consider these facts since Plaintiff "may not amend his complaint in his response brief." *Common v. City of Chicago*, No. 21 C 5198, 2022 WL 1211485, at *1 (N.D. Ill. Apr. 25, 2022)). While that is true, "a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party

expects to be able to prove." *Geoinsky v. City of Chicago*, 675 F.3d 743, 746 n.1 (7th Cir. 2012) (citing *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004)). Plaintiff's complaint, however, does not allege that it is the City's practice to stop more minority motorists than white motorists, or that such a practice was the cause of his constitutional injuries. Plaintiff's proffered statistics have no apparent connection to Plaintiff's allegations regarding training and discipline on excessive force and the use of taser guns. Thus, even if the Court were to consider the statistics presented by Plaintiff, they do not save Plaintiff's claims.

Plaintiff's complaint additionally fails to allege causation. To successfully plead a *Monell* claim, a "plaintiff must show a 'direct causal link' between the challenged municipal action and the violation of his constitutional rights." *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021). The policy must be the "moving force" behind the constitutional violation, rather than a "contributing factor." *Johnson v. Cook Cty.*, 526 Fed. Appx. 692, 696 (7th Cir. 2013); *see also Barrios v. City of Chicago*, No. 15 C 2648, 2016 WL 164414, at *13 (N.D. Ill. Jan. 14, 2016 (citing *Ebrahime v. Dart*, No. 09 C 7825, 2010 WL 4932655, at *4 (N.D. Ill. Nov. 30, 2010)). Having failed to sufficiently allege a widespread policy by the City, he fails also to allege that any such policy is the "moving force" behind the alleged constitutional violations. Therefore, Plaintiff fails to adequately plead the first and third elements of a *Monell* claim.

### ii.    Deliberate Indifference

For the reasons stated above, Plaintiff fails to adequately allege a widespread policy by the City. *Supra*. For this reason, Plaintiff fails to plead that a policymaker within the City was deliberately indifferent to the potential consequences of any particular policy.

To establish that policymakers were deliberately indifferent "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his

action." *Bd. of Cty. Cmm'rs v. Brown*, 520 U.S. 397, 411 (1997). To meet the standard of deliberate indifference, Plaintiff needs to allege facts showing that the municipality was not simply negligent in their action, but that "it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences." *First Midwest Bank*, 988 F.3d at 987 (citing *Bd. of Cty. Cmm'rs*, 520 U.S. at 397).

Recall that Plaintiff here attempts to allege a widespread policy of failure to train, intervene, and discipline regarding the use of excessive force and/or taser guns in non-violent traffic stops. "[I]n situations where rules or regulations are required to remedy a potentially dangerous practice, the [municipality's] failure to make a policy is . . . actionable." *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017). "The key is whether there is a conscious decision not to take action[,]" and the "critical question under *Monell* remains this: is the action about which the plaintiff is complaining one of the institution itself, or is it merely one undertaken by a subordinate actor?" *Id.*

Courts addressing claims similar to Plaintiff's here have found that the failure to train police officers must reflect "a deliberate choice to follow a course of action . . . made from among various alternatives" by a policymaker. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (citation and internal punctuation omitted). If the duties performed by the officers demonstrate that "the need for more or different training is so obvious, and the inadequacy [is] so likely to result in the violation of constitutional rights, [the] policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* However, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the

city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id*. at 390-91.

One "does not need to be an expert" to know that police officers, tasked with pulling people over for traffic violations and armed with taser guns, need to be trained in the constitutional limitations of using force in such situations. *See Glisson*, 849 F.3d at 382 ("A jury could find that it was . . . certain that [correctional medical services] providers would be confronted with patients with chronic illnesses, and that the need to establish protocols for the coordinated care of chronic illnesses is obvious."); *City of Canton*, 489 U.S. at 390 n.10 ("For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." (citation omitted)).

Plaintiff, however, fails to allege facts upon which the Court could infer that the City "adopted a policy of inaction" or "made a deliberate choice to follow a course of action from among various alternatives to do nothing." *Glisson*, 849 F.3d at 382 (citations omitted) (cleaned up). Plaintiff alleges only that the City "has long been aware that its supervision, training and discipline of police officers is entirely inadequate[,]" that "[r]edress that was specifically promised by the City Council and the Superintendent has gone unfilled[,]" and that the City "knew or should have known that [its] actions were violative of rights guaranteed to the Plaintiff." (Compl. ¶¶ 71, 90.) Plaintiff, in his response brief, simply states the conclusion that "policymakers within the City are indifferent towards African American citizens." (Pl.'s Resp. to Def.'s Mot. to Dismiss 5.) Without more, there are no facts that would suggest that the Defendant

Officers' alleged misconduct is "of the institution itself" as opposed to "merely . . . undertaken by a subordinate actor[.]" *Glisson*, 849 F.3d at 382 (citation omitted).

Plaintiff points to a vague broken promise by the City Council and Superintendent. Even if the Plaintiff established that the "City Council" or the "Superintendent" has "final policymaking authority," Plaintiff does not allege that either "acknowledged [the Defendant officers'] conduct and approved of it." *Baskin v. City of Des Plaines*, 138 F.3d 701, 705 (7th Cir. 1998) (finding plaintiff's allegations that the City of Des Plaines failed to take any action against a defendant officer for use of excessive force during a traffic stop failed to allege deliberate indifference by any policymaker). Plaintiff does not explain the nature of the conduct that prompted promises of "redress" or the promised "redress" itself.

Therefore, Plaintiff additionally fails to plead the second element of a *Monell* claim. Counts I and II as against the City are dismissed without prejudice. In light of this decision, the Court declines to decide whether Plaintiff otherwise adequately pleads lack of probable cause on Count I.

### D. Claims by Poole

Finally, the City argues that Plaintiff Darko cannot bring a lawsuit on behalf of Poole, the passenger in the vehicle during the incident at issue. Although certain allegations and claims in the complaint appear to be made by or on behalf of Poole, she did not sign the complaint, and Plaintiff Darko is not a lawyer. In response, Plaintiff Darko states that he is not attempting to bring the lawsuit on behalf of Poole and therefore he is the only Plaintiff in this cause of action. As the parties are in agreement, the City's motion to dismiss all claims and allegations purportedly brought by Poole is granted.

IV.     CONCLUSION

The City's motion to dismiss [19] is granted. Any and all claims brought by Poole are dismissed. Counts I and II by Plaintiff Darko are dismissed with prejudice as against the individual Defendant Officers only and without prejudice as against the City. Counts III and IV are dismissed with prejudice as against all Defendants. Plaintiff Darko shall have until September 12, 2023, to file an amended complaint should he so choose.


**SO ORDERED.**                                            **ENTERED: August 18, 2023**



                                                           _____
                                                           **HON. JORGE ALONSO**
                                                           **United States District Judge**