IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Ernest Darko,** | |
| **Plaintiff,** | Case No. 21-cv-6467 |
| v. | Judge Jorge L. Alonso |
| **City of Chicago, Illinois** | |
| **Defendant.** | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ernest K. Darko ("Plaintiff") brought this action against the City of Chicago (the "City") and certain named police officers employed by the City following his arrest, asserting claims for alleged constitutional violations and infliction of personal injury. The First Amended Complaint ("FAC") asserted four counts against certain named police officers and the City: (I) "false seizure" under the Fourth Amendment and 42 U.S.C. § 1983; (II) excessive force under the Fourth Amendment and 42 U.S.C. § 1983; (III) assault and battery; and (IV) intentional infliction of emotional distress ("IIED"). In a Memorandum Opinion and Order dated August 18, 2023 (the "Opinion"), the Court dismissed Counts I and II of the FAC with prejudice as against the individual defendant officers only and without prejudice as against the City. The Court also dismissed Counts III and IV with prejudice as against all defendants. The Court gave Plaintiff until September 12, 2023, to file an amended complaint should he so choose.

On September 12, 2023, Plaintiff filed a Second Amended Complaint ("SAC") asserting the following four counts against the City: (I) "false seizure" under the Fourth Amendment and 42 U.S.C. § 1983; (II) excessive force under the Fourth Amendment and 42 U.S.C. § 1983; (III) indemnification pursuant to 745 ILCS 10/9-102; and (IV) *respondeat superior*. He does not

1

replead his claims against the individual officers. The City has moved to dismiss the SAC under Rule 12(b)(6) for failure to state a claim. For the following reasons, the City's motion to dismiss is granted.[1]

## I. BACKGROUND

The allegations of Plaintiff's SAC are largely the same as the allegations of Plaintiff's FAC. On December 15, 2019, Plaintiff was driving his vehicle westbound on 69th Street with Dorina Poole as a passenger. (SAC ¶ 5, ECF No. 38.) Both Plaintiff and Poole are African American. (*Id.* ¶ 8.) Two police officers, Officers Jose Roman and Anfernee Ixcot, driving eastbound, made a U-turn in order to follow Plaintiff's vehicle. (*Id.* ¶¶ 6–7, 14, 19.) The police vehicle followed Plaintiff's vehicle for a few hundred feet before turning its emergency lights on. (*Id.* ¶ 10.) Plaintiff pulled over and asked Poole to start recording a video with her cell phone to capture the actions of the police officers before they reached Plaintiff's vehicle. (*Id.* ¶ 12.) Officer Ixcot approached Poole's side of the vehicle, while Defendant Officer Roman approached Plaintiff's window and said he pulled Plaintiff over because of a burnt-out license plate bulb. (*Id.* ¶¶ 13–15.) Plaintiff responded that that was not a valid reason to pull him over since it was still light outside, and Officer Roman asked Plaintiff for his driver's license and insurance. (*Id.* ¶ 16.) Plaintiff refused to provide his license and insurance, stating he had committed no crime and citing his constitutional rights. (*Id.* ¶ 17.)

---

[1] This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 because Plaintiff's complaint alleges actions arising under the Fourth Amendment of the United States Constitution. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 n.6 (1987) ("Federal district courts have original jurisdiction over 'all civil actions arising under the Constitution . . . of the United States.'" (quoting 28 U.S.C. 1983)); *Piscopo v. State Farm Ins.*, 527 Fed. Appx. 552, 553 (7th Cir. 2015). This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015) ("[28 U.S.C. § 1367] lays out a framework by which courts may exercise supplemental jurisdiction over state law claims that share 'a common nucleus of operative facts' with a federal claim properly brought before the court." (quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999))).

Plaintiff asked whether he had committed any crime and was told that he had not. (*Id.* ¶ 18.) Plaintiff asked for a sergeant on the scene and Officer Ixcot came to Plaintiff's window. (*Id.* ¶ 19.) Plaintiff explained his "Common Law Rights" to Officer Ixcot and again requested that the officers call their sergeant to the scene. (*Id.* ¶ 20.) When Sergeant Brown arrived, Plaintiff pleaded with him to let Plaintiff drive away because he had done nothing wrong. (*Id.* ¶ 21.) Sergeant Brown threatened Plaintiff with arrest, resisting arrest, and obstruction of justice charges. (*Id.* ¶ 22.) Plaintiff again pleaded with Sergeant Brown that he be allowed to leave. (*Id.* ¶ 23.)

Sergeant Brown then instructed the other two officers present to remove Plaintiff and Poole from the vehicle. (*Id.* ¶ 25.) Officers Roman and Ixcot attempted to unlock the doors and grab Plaintiff and Poole. (*Id.* ¶ 26.) Out of fear of being "physically brutalized or killed," Plaintiff begged the officers to remove their hands as Plaintiff rolled up the window so they could not enter the car. (*Id.* ¶ 27.)

Once Officers Roman and Ixcot took their hands out of the vehicle window, Officers Sean Gleason and Brandan Cimaglia arrived on the scene in plain clothes. (*Id.* ¶ 28.) Sergeant Brown ordered the four officers to break the window and charge Plaintiff with resisting arrest. (*Id.* ¶ 29.) Officer Cimaglia broke the vehicle window with a metal object causing glass to shatter onto Plaintiff's face and body. (*Id.* ¶ 30.) Once the window was broken, Officer Gleason unlocked all of the doors, and Officer Justin Englert pulled Poole roughly out of the car. (*Id.* ¶¶ 31–32.) Sergeant Brown ordered "his subordinates" to put Poole in the back of the police squad car. (*Id.* ¶¶ 36–37.)

At that point, multiple things happened at once. Officer Cimaglia got into the passenger side of the vehicle and began forcefully pulling Plaintiff, threatening to tase him and pointing the

3

taser at him. (*Id*. ¶¶ 32–33.) Officer Gleason simultaneously opened the back door of the vehicle and began choking Plaintiff with the sweatshirt that Plaintiff was wearing, ripping it down the middle and cutting off Plaintiff's windpipe. (*Id*. ¶ 34.) Officers Roman and Ixcot were, at the same time, hand cuffing Plaintiff and using the handcuffs to pull Plaintiff out of the driver's side of the car. (*Id*. ¶ 35.)

Sergeant Brown ordered the officers to tase Plaintiff, and Officer Roman did so. (*Id*. ¶¶ 38–39.) After Plaintiff's "entire body was greatly shocked," Plaintiff was "forcefully ripped" out of the vehicle and dragged along the concrete to the rear of the vehicle. (*Id*. ¶ 40.) While Plaintiff was "pinned to the hard concrete ground," Officer Cimaglia "violently thrust[] his knee" into the middle of Plaintiff's back while handcuffing Plaintiff behind his back, thereby "inflicting more bodily harm" to Plaintiff. (*Id*. ¶ 41.) Multiple officers held Plaintiff down with their knees on Plaintiff's back until Sergeant Warchol came over and put shackles on Plaintiff's legs. (*Id*. ¶ 42.) Meanwhile, other officers were searching Plaintiff's vehicle, allegedly without Plaintiff's consent. (*Id*. ¶ 43.) The officers knelt on Plaintiff's back until an ambulance pulled up, at which point the officers "roughly" picked Plaintiff up and put him in the ambulance. (*Id*. ¶ 44.)

The paramedics took Plaintiff to St. Bernard Hospital where he waited in the emergency room for several hours before being treated for the discharge of the taser, numbness, back pain, chest pain from being pressed against the ground, and pain in his throat as a result of being choked. (*Id*. ¶¶ 45, 50.) Plaintiff's family sent an attorney to the hospital to "legally consult" with Plaintiff but the "sergeants, officers and watch commander on duty" refused to allow Plaintiff's attorney to meet with Plaintiff despite numerous requests. (*Id*. ¶ 49.) Plaintiff claims that this violated his lawful right to counsel. (*Id*.) After being discharged from the hospital, Plaintiff was arrested without speaking to his attorney. (*Id*. ¶ 51.)

4

Plaintiff alleges that he had not committed any crime, or any violent crime, prior to, during, or subsequent to the traffic stop that would justify the sergeants' and officers' behavior in "physically abusing [Plaintiff's] person and damaging his property." (*Id.* ¶¶ 47–48.)

Plaintiff alleges that it is the City's custom and practice to "fail[] to adequately train and supervise its employee police officers" to "appreciate a commonsense need to mitigate use of force in low level non-violent traffic stops" where there was no violent crime involved (*id.* ¶ 53) and "in the appropriate circumstances under which they are authorized and allowed to discharge their Taser Guns into detainees or people of the community." (*Id.* ¶ 54.) Plaintiff further alleges that it is the City's custom and practice to "fail[] to discipline its officers . . . in any way for the use of excessive force on people of the community and in particular, the inappropriate use of the Taser Gun against [Plaintiff]." (*Id.* ¶ 55.) Plaintiff alleges that Sergeant Brown "directed the police officers to use excessive force against" Plaintiff. (*Id.* ¶ 52.)

Plaintiff further alleges that it is the City's "custom and practice" to allow its police department's "broken disciplinary [and] supervisory systems to flourish by enabling its police officers to abuse vulnerable . . . people with impunity." (*Id.* ¶ 56.) Finally, Plaintiff alleges that there is a "code of silence" that exists within the Chicago police department "whereby officers conceal each other's misconduct in the contravention of their sworn duties." (*Id.* ¶ 58.) Plaintiff alleges that the code of silence and interference with investigation into police officer misconduct "are evidenced and caused by" the police department's "failure to: (a) sufficiently investigate allegations of police misconduct; (b) promptly interview suspected officers or take witness statements and preserve evidence; (c) properly and sufficiently discipline officers; and (d) maintain accurate and complete records of complaints and investigations of misconduct." (*Id.* ¶ 59.) Plaintiff alleges that the practice of interfering with investigation into police misconduct and

maintenance of a code of silence "encourage Chicago police officers to engage in misconduct with impunity and without the fear of official consequences." (*Id.* ¶ 60.)

## II. LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6), a claimant must plead facts that are sufficient to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim requires factual allegations sufficient to support a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must acknowledge all facts provided by the claimant as true, however, any "legal conclusions" should not be accepted as true. *Id.* Pleadings "filed *pro se* [are] to be liberally construed, . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Beal v. Beller*, 847 F.3d 897, 902 (7th Cir. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## III. DISCUSSION

### A. *Monell* Claims (Counts I and II)

The City argues that Plaintiff merely repeats the allegations contained in the FAC that this Court already found insufficient as a basis for holding the City liable pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The Court agrees. For the reasons set forth in the Court's Opinion, with which the Court assumes familiarity and incorporates herein, Plaintiff fails to state *Monell* claims against the City for violations of the Fourth Amendment to the United States Constitution. (Opinion 13–20.) Accordingly, Count I and II of the SAC are dismissed.

Plaintiff's response to the City's motion does not explain why his SAC should survive where the FAC did not. Rather, Plaintiff states that he made a mistake in "adding factual proof" to the SAC due to the "overwhelming responsibility of taking care of his 87[-]year[-old] elderly

6

Mother," and requests leave to file a third amended complaint. (Pl.'s Resp. to Df. City Mot. to Dismiss Pl.'s SAC 3, ECF No. 44.) Plaintiff had previously filed, without leave, a third amended complaint (ECF No. 42) that the Court struck as procedurally improper (Minute Entry dated Nov. 2, 2023, ECF No. 43). The Court nonetheless considers Plaintiff's request for leave to amend, together with the stricken third amended complaint, and concludes that amendment would be futile.

Pursuant to *Monell*, a "municipal entity can be liable under section 1983 for constitutional violations only if those violations were brought about by: (1) an express policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by an agent with final policymaking authority." *Gonzalez v. McHenry Cty.*, 40 F.4th 824, 829 (7th Cir. 2022) (citation omitted) (footnote omitted). The stricken third amended complaint sets forth the same facts as the FAC and SAC but adds (1) a list of six cases filed by other plaintiffs against the Chicago police purportedly alleging the use of excessive force (Third Am. Compl. (stricken) ¶¶ 60A–G, ECF No. 42[2]), (2) allegations that the Civilian Office of Police Accountability ("COPA") failed to investigate Plaintiff's January 29, 2020, report of "police officers['] wrongdoing" (*id*. ¶¶ 88–97), and (3) allegations that the Department of Justice ("DOJ") investigated and reported that some Chicago police officers resort to tasers as a "tool of convenience, with insufficient concern or cognizance that it is a weapon with inherent risks that inflicts significant pain" (*id*. ¶ 98).

As in the FAC and SAC, Plaintiff includes no allegations of an express policy or a decision by a policymaker, and the additional allegations in the stricken third amended complaint

---

[2] The cases cited in Plaintiff's stricken third amended complaint are *Hightower v. City of Chicago et al.*, Case No. 1:17-cv-03543 (N.D. Ill.); *Jackson v. Chicago et al.*, Case No. 17-cv-01930 (N.D. Ill.); *Zeigler v. City of Chicago et al.*, Case No. 17-cv-02070 (N.D. Ill.); *Friends-Smiley et al. v. City of Chicago et al.*, Case No. 16-cv-05646 (N.D. Ill.); *Price v. City of Chicago et al.*, 16-cv-01946 (N.D. Ill.); *Little v. City of Chicago et al.*, Case No. 18-cv-08115 (N.D. Ill.); and *Habasek-Bonelli v. City of Chicago et al.*, Case No. 22-cv-3668 (N.D. Ill.).

are insufficient to save Plaintiff's claim of a "widespread . . . custom or practice." *Gonzalez*, 40 F.4th at 829. The Court assumes familiarity with, and incorporates herein, the law and analysis set forth on pages 13–20 of the Opinion.

The six cases Plaintiff cites that purportedly allege the use of excessive force are not supportive of a widespread custom or practice. "The existence of other lawsuits, without more, does not shed much light on the underlying facts." *Arquero v. Dart*, 587 F. Supp. 3d 721, 730 (N.D. Ill. 2022) (citing *Iqbal*, 556 U.S. at 678). This is because "[a] lawsuit is an allegation[, s]o pointing to other lawsuits simply establishes that other people have made *accusations* against Cook County." *Id*. (emphasis added) (citing *Hamilton v. Oswego Cmty. Unit Sch. Dist. 308*, 2021 WL 767619, at *11 (N.D. Ill. 2021)). Accordingly, "[t]he existence of another lawsuit is not enough to state a claim that a defendant maintains a widespread practice." *Hamilton*, 2021 WL 767619, at *11.

Next, Plaintiff's allegations that on December 29, 2020, he reported "police officers['] wrongdoing" to COPA ,which failed to investigate Plaintiff's claim, and that the DOJ reported that some Chicago police officers resort to tasers as a "tool of convenience," are too vague. A "widespread" policy requires more than a single instance of misconduct, such that it is not "a random event." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). Plaintiff does not allege with any level of specificity the nature of the wrongdoing that he reported to COPA and whether it involved similar incidents of excessive force other than the one that Plaintiff alleges happened to him on December 15, 2019. *See Jackson v. Vill. of Justice*, No. 17-CV-07739, 2020 WL 1530734, at *3–4 (N.D. Ill. Mar. 31, 2020); *see also Scott v. Vill. of Riverdale, Illinois*, No. 22 C 2936, 2022 WL 4182489, at *2 (N.D. Ill. Sept. 13, 2022) ("In his complaint, Scott makes no mention of any other, similar incidents to support his *Monell*

8

widespread practice claim. This leaves the Court with Scott's allegations of his own incident, which do not permit a reasonable inference that the alleged practice or policy was so widespread it constituted a governmental custom."); *Winchester v. Marketti*, No. 11 CV 9224, 2012 WL 2076375, at *4 (N.D. Ill. June 8, 2012) ("What is fatal to the *Monell* claims, however, is that Plaintiff makes no attempt to plead a pattern of similar constitutional violations with any degree of factual specificity."). Nor do Plaintiff's general allegations regarding the DOJ report permit the inference that police officers behaved the same way on other, similar occasions. *See Turner v. City of Chicago*, No. 1:19-CV-00272, 2020 WL 1548957, at *3 (N.D. Ill. Mar. 31, 2020) (considering allegations of a report of Chicago police misconduct and finding "Turner's threadbare assertion that other instances similar to his have occurred in some manner, by some unspecified officers, during an unspecified time period, does not raise Turner's claim for relief above speculation"). Similarly, there are no factual allegations (as opposed to conclusory allegations) linking the alleged misconduct of the individual officers involved in the December 15, 2019, incident to any of the alleged policies or customs. *See Jackson*, 2020 WL 1530734, at *4.

Because it is apparent that amendment would be futile, the Court will not grant Plaintiff leave to amend. *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015) ("[T]he court should grant leave to amend after dismissal of the first complaint unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." (internal citation and quotation marks omitted)).

### B. Claims for Indemnification (Count III) and *Respondeat Superior* (Count IV)

The SAC adds counts for indemnification and *respondeat superior*, which are both ways of holding an employer liable for the actions of its employees. Counts III and IV fail for two reasons.

First, although Plaintiff did not expressly plead claims for indemnification or *respondeat superior* in his FAC, his claims against the City for assault and battery and IIED were necessarily premised on holding the City liable for the actions of its police officer employees. However, the Court dismissed with prejudice Plaintiff's claims against the City and the individual officer defendants for assault and battery and IIED because those claims were untimely. (Opinion 11–13.) Although Plaintiff's SAC does not specifically attempt to reassert claims for assault and battery and IIED, Plaintiff does not name any specific tort by the officers for which he seeks to hold the City liable. The Court therefore assumes Plaintiff is attempting to improperly replead—without any apparent justification—the claims against the City for the alleged assault and battery and IIED by the police officers that were dismissed with prejudice. Plaintiff's indemnification and *respondeat superior* claims fail for this reason alone.

Second, "[a]n indemnification claim necessarily will be tied to an underlying claim for liability." *Baskins v. Gilmore*, No. 17 C 07566, 2018 WL 4699847, at *12 (N.D. Ill. Sept. 30, 2018). The Court dismissed with prejudice the underlying claims for assault and battery and IIED against the police officers, and so Plaintiff's indemnification and *respondeat superior* claims against the City necessarily fail as well. *See McGreal v. AT & T Corp.*, 892 F. Supp. 2d 996, 1018 (N.D. Ill. 2012) (dismissing plaintiff's indemnification and *respondeat superior* claims

10

against employer because plaintiff failed to state a claim against the employees, meaning there was "no wrongdoing to indemnify").

For these reasons, Count III and Count IV are dismissed with prejudice.[3]

## IV.     CONCLUSION

The City's motion to dismiss the SAC [39] is granted. Case dismissed. Civil case terminated.

SO ORDERED.                                                          ENTERED: May 15, 2024

 

_____
**HON. JORGE ALONSO**
**United States District Judge**

---

[3] Plaintiff's stricken third amended complaint contains materially similar claims for indemnification and *respondeat superior* as the SAC and so does not warrant permitting amendment.

11